In re CARLISLE COURT, INC., Debtor.

PERPETUAL AMERICAN BANK, FSB, et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA, a Municipal Corporation, Defendant.

Bankruptcy No. 80–00380.

Adv. No. 83–0110.

United States Bankruptcy Court, District of Columbia.

Dec. 30, 1983.

Louis Ebert, Reynolds, Mundy & Gibson, Washington, D.C., for plaintiff Perpetual American Fed. Sav. & Loan Ass'n.

David Lynn, Washington, D.C., for plaintiff, Stanley Salus, Trustee of Carlisle Court, Inc.

Lawrence Jacobs, Bethesda, Md., for plaintiff, N. Richard Kimmel.

Julia Sayles, Washington, D.C., for defendant, District of Columbia.

## MEMORANDUM OPINION

ROGER M. WHELAN, Bankruptcy Judge.

This adversary proceeding was initiated by Perpetual American Bank ("Perpetual"), a secured creditor of the debtor, Carlisle

Court. Perpetual sought a declaratory judgment against the District of Columbia Government as to the priority of a D.C. real estate tax lien on the debtor's property vis-a-vis a prior recorded security interest (Deed of Trust) of the plaintiff's, Perpetual, on the same property.[1]

The real estate tax liens of the D.C. Government, aggregated approximately $52,230.00 and arose prior to the filing of a Chapter 11 case by the Debtor on September 3, 1980 under the Bankruptcy Code (hereinafter the Code).[2] Additional tax liens arose subsequent to the filing of the Chapter 11 petition but prior to the conversion of this Chapter 11 case to a Chapter 7 case on April 7, 1982. These post-petition tax liens aggregated approximately $289,-000.00.[3]

Plaintiffs assert that pre-petition real estate tax liens are subordinate to prior perfected liens predicated on a prior filed and recorded Deed of Trust against the subject property.[4] The defendant, D.C. Government, asserted that tax liens, based on their *in rem* nature, take precedence over all prior perfected and private secured interests. As to those real estate liens which arose subsequent to the filing of the Chapter 11 case, the plaintiff, Perpetual, asserted that such liens are not entitled to any secured claim status because of the protective effect of the automatic stay under 11 U.S.C. § 362(a)(4)[5]. In addition, the plaintiff argued that 11 U.S.C. § 502(i) relegated such tax claims to a § 507(a)(6) priority position, below the perfected security interest of Perpetual.[6] The D.C. Government, however, maintained that while it is not necessarily abandoning its position that post-petition taxes are also entitled to lien status, such post-petition taxes are at least entitled to be treated as an expense of administration pursuant to the statutory provisions of 11 U.S.C. § 503(b)[7].

There are two issues which must be addressed by this Court; the priority of the D.C. real estate tax liens with respect to a prior perfected security interests in real estate and whether post-petition real estate taxes, arising during the pendency of a Chapter 11 case are entitled to administrative expense priority pursuant to § 503(b)

---

1. The trustee in bankruptcy, Stanley Salus, Esq., as a party in interest in the pending Chapter 7 case, was later added as a party plaintiff by Court Order dated September 1, 1983. In addition, a Motion to Intervene as Party Plaintiff was filed by N. Richard Kimmel, a secured creditor of the debtor and the holder of a second Deed of Trust against the subject property. The Court noted no opposition by the parties and entered an Order granting intervention on November 8, 1983, the scheduled date of hearing on the motions for summary judgment.

2. Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549 (codified in scattered sections of 11, 28 U.S.C.).

3. The stated aggregate sum of $289,000.00 attributable to real estate tax liens also includes water and sewer charges ($37,179.67) and special assessments for the furnishing of fuel oil, repairs and a temporary boiler by the D.C. Government ($229,976.00) in addition to $21,-895.78 for real property tax assessments. It is acknowledged by the parties in their pleadings that these charges and resulting liens are to be treated the same as real estate tax liens and have the same legal effect with respect to the subject property. *See* D.C.Code Ann. § 5–513 and § 43–1529 (1981).

4. The intervenor, N. Richard Kimmel, the holder of a prior recorded second Deed of Trust, relied upon the same argument as the first Deed of Trust holder with respect to its consensual lien against the subject property.

5. The automatic stay prevents "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4).

6. Section 502(i) provides that:
   "a claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507(a)(6) of this title shall be determined . . . the same as if such claim had arisen before the date of the filing of the petition."
   Section 507 prioritizes expenses and claims. Section 507(a)(6) is the sixth priority and includes unsecured claims of governmental units.

7. Section 503(b) allows administrative expenses after notice and a hearing. Administrative expenses are granted a first priority under section 507. Section 503(b)(1)(B) includes as an administrative expense:
   "any tax—(i) incurred by the estate, except a tax of a kind specified in section 507(a)(6) . . . ."

and to distributive priority therefore under § 507(a)(1) of the Code. The plaintiff, Perpetual, the trustee in bankruptcy and the defendant, the D.C. Government, filed motions for summary judgment. Based on the undisputed and material facts of record, the matter is ripe for decision.

## UNDISPUTED FACTS OF RECORD

Carlisle Court, Inc., a corporate debtor, with its principal place of business located in the District of Columbia, filed a voluntary petition under Chapter 11 of the Bankruptcy Code with this Court on September 3, 1980.[8] The principal asset of the debtor was an apartment house located at 1401 Columbia Road, N.W., Washington, D.C. At the time of filing, such apartment house was subject to a security interest arising from a recorded Deed of Trust, executed in 1952, securing Perpetual Building Association, now Perpetual American Bank. There is an approximate balance now due and owing of $184,894.84. A second Deed of Trust had also been executed and recorded securing N. Richard Kimmel. The second Deed of Trust has an existing balance of approximately $72,000.00. There were also D.C. real estate tax liens aggregating approximately $36,613.00 as of the filing of the petition.[9] Although a disclosure statement and plan of reorganization had been filed by the debtor-in-possession on June 10, 1981, and an Order authorizing the sale of the subject real estate was subsequently entered on July 1, 1981, the real property

was never in fact sold. The debtor-in-possession had been unable to effectuate such a sale and the Chapter 11 was converted, after required notice and hearing, to a Chapter 7 case by Order of this Court on April 7, 1982. Stanley Salus, Esq. was appointed trustee in bankruptcy on April 13, 1982. The trustee has continued in that fiduciary capacity to the present date.

In order to preserve the subject property and in order to facilitate the administration of this estate, the trustee sought authority to incur additional secured indebtedness in the amount of $54,000.00 from the original secured lender, Perpetual. The securing of such indebtedness was sought by the trustee pursuant to the statutory provisions set forth under 11 U.S.C. § 364.[10] On December 28, 1982 this Court entered an Order authorizing the trustee to incur such secured indebtedness and as a result an additional Deed of Trust dated January 7, 1983 was recorded against the subject property in favor of Perpetual.

There is no legal dispute that this latter secured indebtedness has priority over all existing liens and encumbrances, including administrative expenses under § 503(b).[11] The sole and only exception to this priority, by consent and approval of the parties, is for the trustee's commission, expenses and attorney's fees incurred in connection with this case.

The administration of the estate is now near conclusion.[12] A resolution of all se-

---

**8.** The parties to this proceeding incorrectly utilized the date October 17, 1980 as the date of the filing of the petition under Chapter 11. A review of the Court records in this case clearly indicates that the effective date of the commencement of the case is September 3, 1980.

**9.** These figures, as of the date of the filing of the Chapter 11, are set forth in the pleading filed by each of the parties herein and are not subject to material dispute. It should be noted however, that in view of the approximate figures rendered by the parties, final distributive figures should be provided to the trustee prior to distribution of any proceeds on the closing of this estate.

**10.** Section 364(c) and (d) of the Bankruptcy Code expressly authorize the incurring of such

senior indebtedness and § 362(c) provides that: "the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title."

**11.** *See supra* note 7.

**12.** Based on this Court's questions directed to the trustee at the time of hearing on the original and pending summary judgment motions, it appears that a sale of the subject real property is anticipated in the immediate future and that the estate will realize the approximate gross sum of $325,000.00. Based on prior accounts of the trustee, it is anticipated that the total gross proceeds for distribution in this estate will aggregate approximately $350,000.00.

cured claims, including tax claims, is necessary in order for the trustee to effectuate a proper distribution of the estate in accordance with the requirements of the Bankruptcy Code. The trustee anticipates that the total gross proceeds realized from liquidation will approximate $350,000.00. The determination of the issues of priority under § 724(b) is imperative because such gross proceeds will be insufficient to satisfy all existing secured claims against the subject property and payment of the expenses of administration in full.[13]

*The Pre-Petition Priority Issue—Secured Claims of Perpetual and Kimmel and the Pre-Petition D.C. Real Estate Tax Lien*

Real estate taxes, and the incidents relating to the collection of such taxes, are matters traditionally left to local statute. The existence and legal effect of real estate tax liens are controlled by statutory authority and the legislative intent expressed therein. The District of Columbia Code in dealing with the impact of real estate tax assessments, expressly creates a lien on the property that remains a continuing charge against the property. In fact, the D.C.Code Ann., § 47–1312 (1981) expressly provides:

[W]henever any real estate in the District of Columbia has been, or shall hereafter be, offered for sale for nonpayment of taxes or assessments of any kind whatsoever ... the Mayor of said District may ... petition the Superior Court of the District of Columbia to enforce the lien of said District for taxes or other assessments on the aforesaid property by decreeing a sale thereof; and up to the time of the sale hereinafter provided for such property may be redeemed by the owner or other person having an interest therein by the payment of all taxes or assessments due the District of Columbia upon said property.... [14]

In dealing with the effect of a tax lien in the context of a condemnation proceeding the Court of Appeals for the District of Columbia in *District of Columbia Redevelopment Land Agency v. Eleven Parcels of Land,* 589 F.2d 628 (D.C.Cir.1978), expressly reaffirmed this concept in these words:

"[I]t is, of course, settled that general real estate taxes are levied against the property and are interests *in rem*.... Thus whether such a 'tax' on realty takes priority over a private secured interest is resolved by ascertaining, as best we can, the precise legal status of this interest *in rem*.... Of course, where private and public claims compete for the proceeds from a tax sale, payment to the government takes priority over satisfaction of private interests. See D.C.Code § 47–1003." [15]

■ The assessed taxes, therefore, arise as liens related to a specific parcel of real property. Based on their *in rem* status, they remain as liens until satisfied by payment in full. Accordingly, the lien will be

---

**13.** Section 724(b) provides:

(b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for taxes, or proceeds of such property, shall be distributed—

(1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;

(2) second, to claims specified in sections 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), and 507(a)(5) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;

(3) third, to the holder of such tax lien, to any extent that such holder's allowed claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;

(4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;

(5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and

(6) sixth, to the estate.

**14.** In addition, D.C.Code Ann. § 47–847 provides for issuance of a deed to the District of Columbia Government as enforcement of the lien of the District's for taxes or other assessments on such real property. The right of redemption by the owner exists by the payment of all taxes or assessments due the District of Columbia upon said property.

**15.** Id. at 629–30.

granted priority over private and prior competing security interests.

This legal effect is consistent with the nature of the tax, *in rem* as to a specific parcel of property, and also is mandated by the type of claim involved; namely, the involuntary nature of taxes. Taxes imposed against real estate are not personal claims against the owner. Instead they constitute a charge against the property and stand on a higher legal footing than a consensual lien.[16] As was described by the United States Supreme Court in *Osterburg v. The Union Trust Company of New York*, 93 U.S. 424, 23 L.Ed. 964 (1887):

> "A lien for taxes does not, however, stand upon the footing of an ordinary encumbrance, and is not displaced by a sale under a pre-existing judgment or decree, unless otherwise directed by statute. It attaches to the res without regard to individual ownership, and when it is enforced by sale, pursuant to the statute prescribing the mode of assessing and collecting them, the purchaser takes a valid and unimpeachable title." *Id.* at 428.

Furthermore, with respect to the burden imposed on prior security interests, such as the one held by the plaintiff in this proceeding, the prior secured parties are almost always in a position to control, in some manner, the payment of such taxes. This is best illustrated by the requirements imposed by lenders requiring the debtor borrower to escrow the amount of such taxes for a given tax period. Accordingly, the pre-petition tax liens of the District of Columbia Government in this proceeding must take precedence over the prior secured claims of Perpetual, as a first trust holder,

and that of N. Richard Kimmel, as the holder of a second Deed of Trust.

*Post-Petition Taxes Arising Subsequent to the Filing of the Chapter 11 Petition and Prior to the Order of Conversion to Chapter 7*

■ The District of Columbia Government originally argued that real estate taxes and assessments arising subsequent to the filing of the Chapter 11 petition are entitled to lien status as secured claims in this proceeding. The legal argument set forth by the District of Columbia in its filed cross-motion for summary judgment, however, adverts to and admits to the legal effect of the automatic stay which prevents such lien status.[17] Because the subject property, as property of the estate pursuant to 11 U.S.C. § 541 of the Code, is in *"custodia legis"*, the right to even "create", as well as "enforce" any such lien is clearly interdicted by the filing of a petition. The express language of the automatic stay prevents this and such prohibition remains as long as the stay is in effect.[18]

The automatic stay in its broad application preventing even the creation of a lien, is clearly consistent with well established bankruptcy principles dealing with the orderly administration and distribution of the debtor's property to creditors. As a result, the real estate taxes assessed during the post-petition period must be either accorded a priority of payment pursuant to Section 507(a)(1),[19] as an expense of administration as defined under § 503(b) of the Code (the position adopted by the D.C. Government in its filed cross-motion for summary judgment), or as a priority claim entitled to

---

**16.** *See* 72 Am.Jur. *State and Local Taxation* 2d § 899 (1963). It is important to note that by operation of law water and sewer charges become liens automatically upon the provision of services by the District of Columbia, such liens having priority over all other liens except liens for District taxes. D.C.Code Ann. § 43–1529 (1981). Likewise, special assessments for housing code violations result in an immediate lien on real property. D.C.Code Ann. § 5–513 (1981).

**17.** *See* supra note 5.

**18.** There is no argument that the automatic stay, which first became effective upon the filing of the petition, on September 3, 1980, still remains effective until "... such property is no longer property of the estate." *See* 11 U.S.C. § 362(c)(1) and (2).

**19.** Section 507 sets out the expenses and claims entitled to priority. First priority is granted to administrative expenses. 11 U.S.C. § 507(a)(1).

distribution pursuant to § 507(a)(6) of the Code [20] (the position advanced by Perpetual and the trustee in bankruptcy in their filed motions for summary judgment).

At first glance there appears to be a clear answer to the issue of taxes which arise by assessment in the post-petition period and are incurred by the estate. They ordinarily would be entitled to an expense of administration under the provisions of § 503(b).[21] This resolution is complicated, however, by the unclear and ambiguous reference in Section 502(i) of the Code which appears to relegate all post-petition tax claims to a pre-petition status.[22] The legislative history of § 502(i) provides little assistance [23] and this conflict has been acknowledged in the Bankruptcy Court case of *In re New England Carpet Company*, 26 B.R. 934 (Bkrtcy.Vt.1983) wherein the Bankruptcy Court, recognizing the apparent ambiguity of § 502(i) denied administrative priority to certain water rents which were in the form of a property tax. The Court relied on Collier's explanation and application of § 502(i) and quoted *Collier on Bankruptcy,* ¶ 502.09, 502–93, footnote 1 (15th ed. 1981) with respect to the application of § 502(i):

> ... It should not be overlooked and bears repeating, that whether or not a claim is entitled priority under section 507 is a vastly different conceptual proposition than in section 503 dealing with administrative expenses arising following the filing of the petition. To the extent a claim is allowed to have administrative expense status under section 503, it is given priority under section 507(a)(1), which provides that administrative expenses allowed under section 503(b) among others, are entitled to that first priority. To the extent, therefore, that section 502(i) deals with

post-petition taxes, it does not deny to such taxes the priority status accorded them by section 507(a)(6). All section 502(i) really does is make plain that a tax claim entitled to priority under section 507(a)(6), even though it arises after the commencement of the case and, therefore, might logically be entitled to administrative status under section 503(b) and, therefore, a first priority under section 507(a)(1), is allowed to the extent allowable "as if such claim had arisen before the date of the filing of the petition." The allocation of such status as a pre-petition claim denies administrative status. To that extent, therefore, the tax claim is not given a first priority as an administrative claim under section 507(a)(1), but retains its sixth priority status under section 507(a)(6). It bears repeating that save for administrative expenses under section 503, all claims asserted against the assets of a debtor for purposes of distribution are deemed to be claims existing at the time of the filing of the petition. 26 B.R. at 937.

The problem of the status of post-petition taxes and the conflict between 502(i) and 507(a)(6) becomes even more apparent when post-petition taxes not only arise but also are assessed after the commencement of the bankruptcy case. Such is the situation present here. Title 11 U.S.C. § 503(b) provides that expenses of administration (entitled to priority of payment pursuant to § 507(a)(1) rather than § 507(a)(6)) shall be allowed after notice and a hearing. Pursuant to § 503(b)(1)(B)(i), administrative expenses include any tax "incurred by the estate, except a tax of a kind specified in section 507(a)(6)." [24] If taxes are, there-

---

**20.** Section 507(a)(6) provides for "allowed unsecured claims of governmental units...".

**21.** *See supra* note 7.

**22.** *See supra* note 6.

**23.** Legislative history as to the meaning of 502(i) is indeed sparse. Discussion in the Senate on October 5, 1978 of the House amendment to the Senate amendment to H.R. 8200 explains that § 502(i) was not even in-

cluded in the Senate amendment to H.R. 8200. Likewise, the House amendment to the Senate amendment or substitute H.R. 8200, deleted Section 502(i), leaving the matter to be determined by a Bankruptcy Tax Bill. 124 Cong. Rec. 33997 (1978).

**24.** Section 507(a)(6) deals with allowed unsecured claims of governmental units if such claims are for—

   (A) a tax on or measured by income or gross receipts—...

fore, incurred by the estate during a post-petition period and are not of 507(a)(6) status, they would seemingly be entitled to priority as an expense of administration under 507(a)(1) of the Code.[25] This is consistent with and in harmony with the treatment of taxes under the old Bankruptcy Act (11 U.S.C. § 104(a)(1)).[26]

In *Swarts v. Hammer,* 194 U.S. 441, 24 S.Ct. 695, 48 L.Ed. 1060 (1904), the Supreme Court, in dealing with estate property tax, held that because the property still receives governmental protection during the period of estate administration, this protection is in turn the basis for liability to such estate for taxation. *Id.* at 444, 24 S.Ct. at 696. *See also Berryhill v. Gerstel,* 196 F.2d 304 (5th Cir.1952). Section 503(b) of the Bankruptcy Code carries over this basic legal concept that the debtor's estate remains subject to taxation, but attempts to clarify the application of post-petition taxes by distinguishing them from pre-petition tax liabilities. This is done in 503(b)(1)(B) by . . . excepting "a tax of a kind specified in section 507(a)(6)." Section 507(a)(6) of the Code by its overall language, deals with taxes that essentially arise prior to the commencement of the bankruptcy case.[27] More specifically, § 507(a) grants property taxes a sixth priority in the distributive scheme providing "the property tax [is] assessed *before* the commencement of the case and [is] last payable without penalty after one year before the date of the filing of the petition (emphasis added)."

Section 502(i) provides for claims that do not arise until after the commencement of the case for taxes entitled to priority under section 507(a)(6), allowing or disallowing them as if such claims had arisen before the date of the filing of the petition.[28] Without reference to § 502(i), the Code would simply mandate that if the tax is assessed *after* the commencement of the case *and* is incurred by the estate, it would be entitled to distributive priority under § 507(a)(1) as an expense of administration. *In re Westholt Manufacturing, Inc.,* 20 B.R. 368 (Bkrtcy.D. Kan.1982), examined 503(b)(1)(B) and § 507(a)(6) and agreed with such an interpretation. The Court explained that § 503(b)(1)(B)(i) appeared to deny administrative status to taxes incurred after commencement of the case to the extent that the taxes were given a priority under § 507(a)(6). The Court decided, however, that such a result was not intended. Rather, Congress intended that "to the extent a debtor's pre-petition liability became a tax claim after the petition, it would not for that reason be given administrative expense status under § 503(b)(1)(B)." *Id.* at 370. The Court then concluded that post-petition taxes incurred by the estate, although of a kind listed in § 507(a)(6), would be granted administrative status. *Id.* at 372. Such an interpretation is consistent with the statutory scheme of the Code and is clearly consistent with results obtained under the old Bankruptcy Act. *See also In re South Shore Vending, Inc.,* 25 B.R. 111 (Bkrtcy.D.

(B) a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition;
(C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;
(D) an employment tax on a wage, salary, or commission of a kind specified in paragraph (3) of this subsection earned from the debtor before the date of the filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition;
(E) an excise tax on—. . .
(F) a customs duty arising out of the importation of merchandise—. . .

(G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss.

25. Section 507(a)(1) grants first priority to "administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28."

26. Bankruptcy Act of July 1, 1898. Ch. 541, 30 Stat. 544 repealed 1978) (previously codified at 11 U.S.C. §§ 1–1255).

27. *See supra* note 24.

28. *See supra* note 6.

Mass.1982); *In re Stack Steel and Supply,* 28 B.R. 151 (Bkrtcy.W.D.Wash.1983).

While the statutory distinction between § 503(b)(1) taxes and § 507(a)(6) taxes is not completely clear, the proper focus would seem to be on whether the tax at issue is a pre-petition or post-petition liability as taxes assessed before commencement of the case are addressed in § 507(a)(6).[29] As summed up by *Collier on Bankruptcy,* ¶ 503.04, 503–23 (15th ed. 1981):

> The point of all this is that section 503(b)(1)(B)(i) is not entirely plain. It cannot be determined that Congress meant to deny administrative claim status to every kind of a tax described in section 507(a)(6) or whether it meant to deny administrative status to such a tax where it was not an incident to the operation of the debtor's business after the filing of the petition.

As applied to the facts of this proceeding, the post-petition real estate taxes of the D.C. Government assessed after the commencement of the case and incurred by the estate [30] would appear to be proper expenses of administration within the meaning of 503(b)(1)(B).[31]

A reading of § 503 and § 507 does not resolve the issue of post-petition taxes, however, because of the conflict with

§ 502(i). To the extent that a tax claim merely arises after commencement of the case, is a tax within the defined parameters of § 507(a)(6),[32] and is *not* incurred by the estate,[33] as is required by § 503(b)(1)(B) [34] then it is properly relegated to a pre-petition status under 502(i).[35] To the extent that a tax *is* incurred by the estate as set out by § 503(b), and is not a property tax within the defined parameters of § 507(a)(6) then it is granted administrative priority under § 503(b).[36] If § 502(i) is read to relegate all post-petition tax claims of the kind described in § 507(a)(6) to pre-petition status, however, the statutory language in § 503(b), *excluding* taxes of a kind specified in § 507(a)(6) and denying them administrative priority, becomes meaningless and would appear to be in clear conflict with § 503(b)(1)(B).[37]

Because § 502(i) relates not only to a tax claim that arises after commencement of a case but also is "... for a tax entitled to priority under Section 507(a)(6) ...",[38] it would seem logical and consistent with principles of statutory construction, which construe statutes *in pari materia* when relating to the same subject matter,[39] to construe § 502(i) to deal solely with tax claims entitled to priority under § 507(a)(6). This section, specifically § 507(a)(6)(B), grants priority only to property tax claims which

---

**29.** 11 U.S.C. § 507(a)(6)(B) provides sixth distributive priority to "a property tax assessed before commencement of the case and last payable without penalty after one year before the date of the filing of the petition...."

**30.** The subject real estate constituted the sole and only asset of this estate. In view of the utilization of that property as rental property, both by the debtor-in-possession during the reorganization period, and by the trustee in bankruptcy, the governmental protection enjoyed by these persons would seem to place the tax within the category of a tax "incurred by the estate".

**31.** *See supra* note 7.

**32.** *See supra* note 24.

**33.** A tax might, in the general sense, arise during the post-petition period merely because payment is due during that time frame. However, if this is the only relation to the estate, it is deemed to be a pre-petition tax within the

meaning of 502(i) and 507(a)(6). Likewise, if property of the estate were to be abandoned by the trustee in bankruptcy pursuant to 11 U.S.C. § 554, the tax that might have been incurred by the estate and entitled to an administrative expense priority would lose that priority. This results because the tax could no longer be deemed to be within the intended language, namely, incurred by the estate. In other words, § 554 would remove such property, and the attendant tax, from the estate.

**34.** *See supra* note 7.

**35.** *See supra* note 6.

**36.** *See supra* note 7.

**37.** *Id.*

**38.** *See supra* note 6.

**39.** *See,* 2A Sands, Sutherland Statutory Construction § 51.01 (1973).

are assessed *before* commencement of the case.[40] Accordingly, to the extent that property tax claims are assessed *after* commencement of the case and are incurred by the estate within the intended language of § 503(b)(1)(B), such taxes are not deemed to be pre-petition tax claims by operation of § 502(i) and are not afforded pre-petition status. These taxes are administrative claims as defined under § 503(b)[41] and hence are entitled to distributive priority under § 507(a)(1) of the Code.[42] Such interpretation and construction of § 502(i) would seem to give further clarification and meaning to pre-petition tax claims as defined under the various subsections of § 507(a)(6) without in any way interfering with those tax claims that are incurred by the estate during the post-petition period and which are outside of the time proscriptions set forth under § 507(a)(6) of the Bankruptcy Code.

■ Accordingly, based on the undisputed facts of record, the Court must conclude that these D.C. real estate tax liens which were assessed after the Chapter 11 filing on September 3, 1980 and which were incurred by the estate during the period of reorganization, are properly expenses of administration within the meaning of 503(b)(1)(B). These taxes are entitled to administrative priority under the distributive scheme of 507(a)(1) of the Code.

*Distributive Scheme Pursuant to § 724(b) and § 726(a) and (b) of the Bankruptcy Code.*

■ Having determined the status of the tax claims, distribution by the trustee in bankruptcy in this Chapter 7 case must take into consideration the priority of the D.C. tax lien, the subordinated consensual liens of Perpetual and Kimmel and the priority claims that arise in the estate under § 507(a)(1) through (a)(5) of the Bankruptcy Code.[43] *See Pearlstein v. U.S. Small Business Administration,* 719 F.2d 1169 (D.C.Cir.1983). The established priorities,[44]

40. *See supra* note 24.

41. *See supra* note 7.

42. *See supra* note 25.

43. Section 507(a) provides that "[t]he following expenses and claims have priority in the following order:
    (1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.
    (2) Second, unsecured claims allowed under section 502(f) of this title.
    (3) Third, allowed unsecured claims for wages, salaries, or commissions, including vacation, severance and sick leave pay—. . .
    (4) Fourth, allowed unsecured claims for contributions to employee benefit plans—. . .
    (5) Fifth, allowed unsecured claims of individuals, to the extent of $900 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided.
    (6) Sixth, allowed unsecured claims of governmental units, . . .".

44. Although not raised in the pleadings filed herein, it will be helpful to consider the effect of interest and penalties as they might apply to the underlying tax claims at issue. As a well established principle of bankruptcy law, the penalties that are not related to actual pecuniary loss will ordinarily not be allowed in a Chapter 7 case unless provided for by 11 U.S.C. § 726(a)(4). However, penalties which arise during the reorganization period or subsequent period of administration in Chapter 7 are entitled to administrative expense priority by reason of the express language set forth under 503(b)(1)(C) allowing any fines, penalty, or reduction in credit, relating to a tax of a kind specified in [503(b)(1)(B)]. Interest accruing on the underlying tax claims are properly allocated to the respective periods of administration as follows:

Interest on taxes will be allowed as they accrued on pre-petition claims only through the date of the filing of the Chapter 11 case, namely, September 3, 1980; interest accruing on taxes incurred by the debtor-in-possession during the period of the Chapter 11 reorganization up to the date of conversion or April 17, 1982 are allowed; and interest on taxes arising for the period of administration during the Chapter 7 case is allowed. See *City of New York v. Saper,* 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949); *Nicholas v. United States,* 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966). This illustrates the well-established principle that in bankruptcy cases interest on claims ceases to accrue at the initiation of the proceeding, as well as upon conversion of a Chapter 11 case to one under Chapter 7.

with respect to any final distribution by the trustee in bankruptcy must, therefore, be as follows:

A. To Perpetual for its secured loan to the trustee, as evidenced by a promissory note and deed of trust dated December 28, 1982. This distribution is effected by way of senior lien status created pursuant to 11 U.S.C. § 364(d)(1); [45]

B. To the trustee in bankruptcy for all priority claims specified under §§ 507(a)(1) through (a)(5) of the Code [46] up to the amount of the pre-petition tax lien due the District of Columbia Government;

C. To the extent that there remains a surplus, after satisfying the priority tax claims in paragraph "B", then to the pre-petition tax liens of the District of Columbia Government which is senior to all other liens (namely, Perpetual and N. Richard Kimmel);

D. After satisfaction of the pre-petition D.C. tax lien, then the balance of remaining proceeds to the holders of the first and second deeds of trust (namely, Perpetual and N. Richard Kimmel, in that order);

E. If any surplus then remains after satisfaction of the claims set forth in paragraph "D", the remaining balance shall then be distributed to the District of Columbia Government for its taxes incurred by the "estate" as an expense of administration within the meaning of section 503(b)(1)(B) and hence entitled to distributive priority under section 507(a)(1) of the Code. To the extent that there were administrative expense claims, other than taxes, not satisfied under paragraph "B", then such other administrative claims would share pro-rata with the D.C. Government under section 507(a)(1).

## CONCLUSION:

Based on the *in rem* nature of the D.C. tax lien as a continuing charge against the real estate, and the legal effect accorded such a lien by the D.C.Code, such real estate tax lien is a lien senior to all other liens and encumbrances against the subject real estate. As to all post-petition real estate taxes assessed after commencement of the case on September 3, 1980 and "incurred by the estate," such taxes are not entitled to lien status based on the broad application of the automatic stay under 11 U.S.C. § 362(a)(4). The stay prevents "... any act to *create,* perfect, or *enforce* any lien against property of the estate;" (emphasis added). To the extent that such post-petition taxes are within the intention of § 503(b),[47] however, such taxes are an expense of administration and therefore, would be entitled to distributive priority under § 507(a)(1) of the Bankruptcy Code.

Because § 502(i) deals only with tax claims entitled to priority under § 507(a)(6) and because *after* assessed property taxes are not entitled to priority under § 507(a)(6), § 502(i) of the Code is not applicable to the post-petition taxes in this proceeding. All after assessed property tax claims incurred by the estate should retain administrative expense priority under 503(b).

---

**45.** *See supra* note 10.

**46.** *See supra* note 43. In determining the order of distribution to be made with respect to priority claims arising under § 507(a)(1) through (a)(5), resort may be necessary to the provisions of § 726(b) which provides that:

Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), or (6) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in a particular paragraph, except that in a case that has been converted to this chapter under section 1112 or 1307 of this title, administrative expenses incurred under this chapter after such conversion have priority over administrative expenses incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

**47.** *See supra* note 7.

The distributive scheme, set forth under § 724(b) [48] of the Code should be followed insofar as the pre-petition real estate taxes are concerned. They constitute a senior lien against the subject real estate and, accordingly, are subordinated only to the first five levels of priority claims set forth under the Bankruptcy Code. (They are of course subordinated to the lien incurred by the trustee and accorded senior lien status by Order of this Court dated December 28, 1982). After satisfaction of these priority claims (priority claims under §§ 507(a)(1) through (a)(5)) up to the amount of the pre-petition tax lien, the proceeds of distribution then properly go to the pre-petition tax lien which is senior to the liens of the first and second Deeds of Trust. The balance of any proceeds of distribution then go to the aforesaid consensual liens of Perpetual and Kimmel.

In order for the trustee in bankruptcy to accurately and properly apply the aforementioned legal principles, the District of Columbia Government and the secured creditors herein are directed to furnish the trustee the final amounts due with respect to each of the claims, no later than January 31, 1984.

The foregoing Memorandum Opinion shall constitute the findings of fact and conclusions of law of this Court pursuant to Bankruptcy Rule 7052.

An appropriate Order and Judgment in accordance with the findings as set forth in this Memorandum Opinion and in accord with the requirements of Bankruptcy Rule 9021(a) shall be entered and docketed on December 30, 1983.