RAYMOND C. LAMB, PLAINTIFF, v. CITY OF VENTNOR, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.

Atlantic County Court
Law Division

June 30, 1978.

*Mr. Charles R. Previti* for plaintiff (*Messrs. Previti, Todd & Gemmel,* attorneys).

*Mr. Martin Blatt* for the City of Ventnor (*Messrs. Blatt, Blatt, Mairone & Biel,* attorneys).

FRANCIS, A. J. S. C. Plaintiff Raymond Lamb brings this action pursuant to *N. J. S. A.* 40A:9–144.1 to review

his dismissal as tax collector of the City of Ventnor. In general terms, the issue raised by plaintiff is whether a municipality may dismiss its tax collector for refusing to assume responsibility for the implementation and collection of a newly initiated charge on excess water usage. Plaintiff now seeks reinstatement as tax collector, reimbursement of back pay and restoration of the status quo.

Plaintiff was appointed tax collector of the City of Ventnor on September 1, 1970, at which time he also assumed the duties of official tax searcher. Among the responsibilities he assumed as tax collector were billing and collecting local property taxes, preparation of monthly and annual revenue reports for presentation to the board of commissioners, and maintenance of the records relating thereto.

In 1973, in response to pressures from the State of New Jersey to take water conservation measures, the board of commissioners of Ventnor (board) began taking steps to implement a water metering system whereby residents would be billed on a graduated scale for water usage in excess of a standard allowance. From 1974 on plaintiff, in his capacity as tax collector, had administered the billing program on water meter installations as part of his routine duties. By the summer of 1976 the city had begun to intensify its implementation efforts, hiring an independent expert to design and draw up specifications for a water billing system.

A series of workshop meetings designed to expedite implementation were held throughout the Fall of 1976. On November 10, 1976 plaintiff was informed in writing by Commissioner Best, who had charge of the Revenue and Finance Department, of the specific responsibilities which were to be assigned to him as tax collector in implementing and administering the new water billing system. By late January 1977 implementation of the system lagged behind schedule, due at least partially to plaintiff's refusal to follow Best's directive. As a result, Best served plaintiff on February 11, 1977 with notice of a hearing to remove

plaintiff from the office of the tax collector on the ground that plaintiff failed to fulfill the obligations thereof.

Plaintiff responded by contracting Bernard M. Murphy, tax collector of the Township of Egg Harbor, who had also been active on the tax collectors' grievance committee, and by arranging a meeting of Best, Murphy and himself at a diner. At that meeting plaintiff demanded increased pay and additional help in return for assuming the additional duties of the water billing program. Best represented to plaintiff that he would attempt to satisfy both demands, but that ultimately the increased pay would be subject to board approval, and additional help would depend upon a demonstrated need therefor. Plaintiff left Best at the diner meeting with the impression that the offer was reasonable and that plaintiff would assume the new duties.

When the additional help and pay appeared doubtful, over the next few days, plaintiff again refused to cooperate with implementation efforts, and his removal hearing was rescheduled for March 11. On April 1, after a hearing on the record, plaintiff was advised that he had been found guilty of violating the requirements of his office, and that he was terminated effective April 7, 1977.

Plaintiff thereafter filed the complaint on which this action is based, alleging the additional responsibilities engendered by the water billing program would have made it impossible for him to fulfill hs statutory obligations as tax collector and that the action of defendant City of Ventnor in terminating his employment was arbitrary, capricious and unreasonable. Plaintiff has advanced four main arguments in his brief and summation. Plaintiff first contends that the charge for excess water usage is not a tax and therefore is not the responsibility of the tax collector. The next three contentions proceed on that premise. Plaintiff's second contention is that, because detailed statutory provisions create numerous duties for the municipal tax collector, and such provisions do not expressly mention the duty of collections

for excess water usage charges, the defendant city exceeded its grant of taxing authority from the State by imposing such a responsibility on plaintiff. Plaintiff further contends that the imposition of such responsibility creates a conflict which interferes with the statutorily mandated duties of the office of tax collector. Finally, plaintiff contends that the imposition of the additional duties effects a reduction in the salary of the municipal tax collector in violation of *N. J. S. A.* 40A:9-165. Plaintiff's contentions will be considered *ad seriatim.*

As to plaintiff's first contention, it is clear in New Jersey that charges for water usage may be distinguished from taxes in certain kinds of cases. However, examination of cases making such a distinction reveals that these cases have focused on the contractual nature of the relationship between the municipality providing water and the residents consuming that water rather than on the procedure for collecting water charges. See *Daniel v. Oakland,* 124 *N. J. Super.* 69 (App. Div. 1973); *Lehigh Valley R.R. Co. v. Jersey City,* 103 *N. J. L.* 574 (Sup. Ct. 1927); *Ford Motor Co. v. Kearny,* 91 *N. J. L.* 671 (E. & A. 1918). See also, *K. S. B. Technical Sales Corp. v. North Jersey Water Supply Comm'n,* 151 *N. J. Super.* 218 (App. Div. 1977). On the other hand, the Legislature in New Jersey has often elected to include water rents with taxes in statutory provisions dealing with various aspects of the administration of the taxing power. See, *e. g., N. J. S. A.* 40:62-79; *N. J. S. A.* 54:5-19.

Under these circumstances the question becomes not so much whether water rents are "taxes" under a strict definition of that term, an essentially semantical exercise, but whether municipal government may treat water rents as taxes for purposes of municipal collection procedures. Plaintiff contends that the duties and obligations of the tax collector flow exclusively from the State and are not a matter of local prerogative. In support of this contention he cites a plethora of statutory directives in *N. J. S. A.* 54:4 and 54:5 which

impose mandatory duties upon the tax collector. Plaintiff posits that these duties are exhaustive, thus indicating a legislative intent to preclude the municipal governing body from adding to them.

It is, of course, true that there may be limits as to the amount of control which a municipality may exercise over its tax collector, but this will not preclude a municipality from exercising the reasonable control required to administer the affairs of the municipality in a reasonable and efficient manner.

Although the tax collector holds an elective office and his duties are in the main defined by statute, he is nevertheless a borough officer engaged in performing an important branch of the borough's business, a division of public enterprise that is closely integrated with and in some name respects placed under the direction of borough council. *Hewitt v. Seaside Park Mayor and Council*, 133 *N. J. L.* 467 (Sup. Ct. 1945).

■ Shortly before plaintiff assumed the office of tax collector in 1970, Ventnor duly adopted Ordinance 6 (1969), which established and defined numerous positions and their respective duties within the scheme of its local government. The ordinance incorporated a reclassification survey report in which are stated, among other matters, examples of the kinds of work required of the tax collector. The report states that the tax collector "in addition to supervising and performing the work involved in the collecting of personal and property taxes, may supervise and perform the work involved in the collection of other revenues. * * *" In effect, plaintiff challenges the validity of that ordinance as violative of state preemption in the field of taxation.

To prevail on a claim of preemption, plaintiff must demonstrate an unreasonable conflict between the ordinance and the statute. Alternatively, plaintiff may show preemption by demonstrating legislative intent to completely occupy an area of regulation to the exclusion of local governance. *Summer v. Teaneck Tp.*, 53 *N. J.* 548, 554 (1969); *Coast*

*Cigarette Sales v. Long Branch Mayor and Council,* 121 *N. J. Super.* 439, 445–446 (Law Div. 1972).

The Supreme Court, in *Overlook Terrace Mgmt. Corp. v. West New York Rent Control Bd.,* 71 *N. J.* 451 (1976), culled a series of inquiries from cases in this area of litigation to determine whether preemption will apply:

1. Does the ordinance conflict with state law, either because of conflicting policies or operational effect (that is, does the ordinance forbid what the Legislature permitted or does the ordinance permit what the Legislature has forbidden)? * * *
2. Was the state law intended, expressly or impliedly, to be exclusive in the field? * * *
3. Does the subject matter reflect a need for uniformity? * * *
4. Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation? * * *
5. Does the ordinance stand 'as an obstacle to the accomplishment and execution of the full purposes and objectives' of the Legislature? * * *

[at 461–462]

As defendant correctly notes, there exists no explicit statutory proscription limiting the duties of a municipal tax collector to those mandated by statute. Plaintiff's case for preemption, therefore, must rest upon implication. The statutory provisions cited by plaintiff as comprising a comprehensive scheme of tax collectors' duties are, in fact interspersed throughout *N. J. S. A.* 54:4 and 5, rather than listed sequentially in a particular section. It appears that the Legislature, instead of attempting to enumerate all conceivable duties of a tax collector, has attempted to vest certain specified collection procedures with a modicum of uniformity in order to insure a standard level of efficiency and fairness throughout the State. An examination of the enactment dates of the provisions cited by plaintiff makes it clear that the provisions were not enacted on a single occasion as a comprehensive scheme, but in response to needs as they have been perceived by the legislature over the years. The present tax system is in actuality an amalgam of prior enactments. Even if the

present statute were deemed to contain a "complete scheme of local taxation" for the State, in the absence of a clear intent to preempt, the statute need only be followed as far as its provisions extend. *Booth & Brother v. Bayonne*, 85 *N. J. Eq.* 281 (1914).

*N. J. S. A.* 54 itself makes no mention as to the delegation of responsibility for the collection of water charges. Historically, the levying of water rates has been subsumed as a valid local exercise of the taxing power as legislatively authorized. See *In re Comm'rs of Elizabeth*, 49 *N. J. L.* 488 (Sup. Ct. 1882). The types of revenue which a municipality is permitted to raise under a legislative grant of the taxing power have traditionally been couched in broad terms. In *Bernards Tp. v. Allen*, 61 *N. J. L.* 228 (E. & A. 1897), it was stated:

The legislature, in the exercise of its sovereign power, may confer upon the various political subdivisions of the state (which are merely instrumentalities for the better administration of the government in matters of local concern), power to impose and levy local rates, (taxes and assessments to provide the revenue by which municipal expenses are borne and debts and liabilities paid), on the principal that for local purposes the local authorities are the representatives of the people. [at 236]

Although other cases have drawn a "fundamental" distinction between the sources of authority for the levying of water rates and taxes, this distinction has usually been invoked for the purpose of determining liability for water consumption under a metering system whereby the consumer is billed for his entire *pro rata* consumption. In such cases the water charge has been deemed payment under an implied contract for the sale of goods or services rather than an exaction under authority of the taxing power. See *e. g., Diorio v. Fair Lawn*, 118 *N. J. Eq.* 556 (1935). *Lehigh Valley R.R. Co. v. Jersey City, supra; Ford Motor Co. v. Kearny, supra; Jersey City v. Morris Canal and Banking Co.*, 41 *N. J. L.* 66 (Sup. Ct. 1879). Whether this distinction would apply to

a hybrid system such as Ventnor's, where base water use is subsidized by general tax revenues but excess water use is measured and charged for, is questionable, but in any event is not material to the facts of this case.

As I have noted, we are not here concerned with the effect of Ventnor's water "surcharge" on a consumer's liability to the municipality, but whether the change in billing procedures for water usage should, in itself, remove those procedures from the aegis of the tax collector. Whether the charge is denominated a tax or water rent is not dispositive. What are material in determining whether the Legislature intended preemption in this case, however, are the historical and functional kinship which taxes and water rates share, and the grants of authority from the State enabling municipalities to exercise a broad measure of discretion in the delegation of duties within their local governments. A reading of the pertinent enabling provisions and the cases construing them suggest that the Legislature intended municipalities to have maximum flexibility in this regard.

The crucial provision of the Walsh Act, enabling commissioners in a commission form of municipal government to delegate duties as they deem most efficacious, is *N. J. S. A.* 40:72–5, which states:

The board of commissioners shall determine the powers and duties to be performed by each department and shall assign such powers and duties to each department as it may deem appropriate. The board shall prescribe the powers and duties of all officers and employees and may assign particular officers and employees to one or more departments and may require any officer or employee to perform duties of two or more departments if the work required of such officer or employee in such different departments be similar in character, and make such other rules and regulations as may be necessary or proper for the efficient and economical conduct of the business of the municipality.

Inasmuch as this provision concerns municipal administration, it should be read *in pari materia* with the enabling provisions of *Title* 40 pertaining to the regulation and adminis-

tration of a municipally-operated water supply system. *N. J. S. A.* 40:62–62 states:

The governing body may make all necessary and proper contracts, in the manner hereinafter in sections 40:62–47 to 40:62–105 of this title provided; and elect all engineers, surveyors, officers, agents, employees, committeemen and boards it may deem necessary or convenient for accomplishing the purposes or providing and supplying the municipality and its inhabitants with water; and may define their duties, regulate their compensation and provide for their removal.

A companion provision, *N. J. S. A.* 40:62–77, refers even more specifically to a municipality's authority to determine collection procedures for water charges:

The governing body of every municipality providing and supplying water for the public and private use of such municipality and its inhabitants, may make, enforce, amend and repeal all such ordinances, resolutions and regulations as it may deem necessary and proper for * * * fixing and collecting the water rents or prices for water, and for imposing penalties in addition to cutting off the water for nonpayment thereof.

Addressing itself to the issue of the authority of the board of commissioners under the cited provision of the Walsh Act (*N. J. S. A.* 40:72–5) as it pertains to the assignment of duties to the various departments within a municipality, the court in *Pashman v. Friedbauer,* 1 *N. J. Super.* 616 (Law Div. 1949), aff'd 4 *N. J. Super.* 123 (App. Div. 1949), held:

* * * (B)y statute the Board of Commissioners acting through its majority, is the governing power in the municipality, and is vested with the power and charged with the duty of determining the powers and duties to be performed by each department of assigning, or at any time re-assigning, such powers and duties to such department as the Board of Commissioners " 'in their judgment appropriate,' and, in the absence of any evidence that such a determination and assignment was made in bad faith or was an abuse of discretion, a reviewing court will not disturb such action." [at 619]

In affirming, the Appellate Division stated that "a commissioner, by virtue of his office, under the commission form

of government, is charged with knowledge that duties and powers may be assigned to him or re-assigned to another as the Board of Commissioners in their judgment deem appropriate." 4 *N. J. Super.* at 128.

Although *Pashman* refers specifically to the duties delegated to commissioners and their respective departments, its reasoning leads *a fortiori* to the conclusion that officers serving within such departments must be subject to the same authority. To hold otherwise is to undermine the legislative scheme of the Walsh Act and the municipal chain of command promulgated thereunder.

The Supreme Court further explored the contours of the Walsh Act in *Grogan v. DeSapio*, 11 *N. J.* 308 (1953), making clear the great latitude the Walsh Act was designed to give to commissioners to delegate duties as they may find most efficient and economical.

It is settled that the board of commissioners under *R. S.* 40:72–5 [now *N. J. S. A.* 40:72–5] exercises delegated legislative power in making departmental distributions and assignments of governmental powers and duties. [at 320–321]

Under section 4 of the Walsh Act prior to 1927 it was settled by judicial construction that the allocation of powers and duties to the departments was to be appropriate to the titles of the several departments. * * * Centralization of responsibility in the commissioners, the welfare of the community and efficient and economical administration of municipal affairs, as hereinabove demonstrated, were paramount objectives of the Walsh Act. And not only was this inherent in the Walsh Act, but also it is basic law that the specific problems confronting a municipality are of prime importance in the determination of the reasonableness of the governing body's exercise of its powers. [at 323; citations omitted]

. While the aforementioned statutory provisions give municipalities the authority to delegate various duties, other statutory provisions imply a special affinity between taxes and charges for water usage. The municipal officer charged with the collection of tax arrears is also charged with the collection of water rent arrears under *N. J. S. A.* 40:62–79. Likewise, it is the duty of the tax collection to enforce water

rent liens in the same manner that he enforces tax liens under *N. J. S. A.* 54:5–19. Water rents are implicitly categorized as a "public assessment" under the definition of "Assessor" under *N. J. S. A.* 1:1–2. Other provisions also accord water rents and taxes like treatment. See *e. g., N. J. S. A.* 54:4–58 *et seq.* and 54:4–107.

As is the case in many municipalities, the office of the tax collector in Ventnor is peculiarly well suited to handle collection procedure for other types of municipal revenue. The tax collector maintains tax records for the same property owners who are subject to the water surcharge. The tax collector maintains a comprehensive roll of addresses for mailings of annual tax bills, which mailings may also be used to carry one of the city's semi-annual water billings. The tax collector's office is experienced in billing procedures which are readily adaptable to a water billing system, and maintains office equipment and physical facilities which can be made readily available for use in a water billing operation. Under these circumstances it is clear that joint tax and water billings are not only operationally compatible but highly desirable for the sake of economy and efficiency. It may also be inferred from *N. J. S. A.* 54:4–122.3 and 54:4–122.9, which provide for the designation of banks or trust companies as the depository of "tax collections and other public moneys" collected by the tax collector, that the Legislature has viewed the tax collector as an appropriate municipal official for the collection of municipal revenues other than taxes.

As stated in *Summer v. Teaneck, supra* 53 *N. J.* at 554–555, the ultimate question in determining preemption is "whether upon a survey of all the interests involved in the subject, it can be said with confidence that the legislature intended to immobilize the municipalities from dealing with local aspects otherwise within their power to act." In view of the foregoing considerations, the enabling provisions of *N. J. S. A.* 40 and 54, lack of any pertinent statutory prohibition express or implied, and the similarity and

operational compatability of water surcharge and tax collections, I find that state tax legislation has not preempted the broad discretion conferred upon a municipality to delegate responsibility for water surcharge collections.

Plaintiff's third contention, that the additional duties entailed in collecting water surcharges would conflict with and prevent him from fulfilling his statutorily mandated duties, is grounded not on any substantive conflict between those duties, but on the increased work volume generated by the addition of a water billing program. Plaintiff further alleges that he received notice of his role in the implementation of the program at a late date, and that the actions of the City of Ventnor in imposing the additional duties and subsequently dismissing him were arbitrary, capricious and unreasonable.

Based on the proofs I find that plaintiff had been generally aware of the city's plans for implementation for at least two years prior to the written directive he received from Commissioner Best on November 10, 1976. Plaintiff ignored that directive for over three months before arranging the meeting with Commissioner Best at a diner in late February 1977 and making his demand for increased pay and additional help. Commissioner Best exhibited restraint and tolerance at that meeting, and assured plaintiff that if the additional help and pay proved to be warranted, they would be provided subject to approval by the board of commissioners. Plaintiff left Commissioner Best at that meeting with the distinct impression that he would remain at his position and proceed with the much delayed task of implementation. I find that plaintiff's subsequent refusal to assume responsibility for water billing was a direct act of insubordination calling for action by the board of commissioners, and ultimately justifying plaintiff's dismissal.

As discussed, *supra,* tax collection procedures bear great similarities to collection procedures for water charges. The evidence showed that tax office procedure in Ventnor readily

lent itself to water surcharge collections, and the effort required to implement the water billing program was relatively insignificant. While, from a supervisory point of view, the program might conceivably have called for additional part-time help, defendant has demonstrated that implementation of the water billing program in the tax office after plaintiff's dismissal was neither unduly burdensome, nor did it interfere with the performance of the statutory duties of the tax collector. Plaintiff's refusal was both premature and unreasonable, and the city clearly acted within its discretion in requiring plaintiff to comply with its directives. I find further, based on the evidence, that plaintiff was more concerned wth obtaining a salary increase than he was with the potential detriment to his statutory duties.

Plaintiff finally contends that the imposition of the additional duties on the tax collector without an increase in salary effectively amounted to a reduction in salary in violation of *N. J. S. A.* 40A:9–165. Under my findings herein that the duties of the water billing program are properly delegable to the office of the tax collector, this contention is clearly without merit. Our former Supreme Court held in *Hoboken Local No. 2, etc., Ass'n v. Hoboken,* 23 *N. J. Misc.* 334, 44 *A.* 2d 329 (Sup. Ct. 1945):

> It is a well settled rule, that a person accepting a public office with a fixed salary is bound to perform the duties of the office for the salary. He cannot claim additional compensation for the discharge of these duties, even though the salary may be a very inadequate remuneration for the services. Nor does it alter the case that by subsequent statutes or ordinances his duties are increased and not his salary. His undertaking is to perform the duties of his office whatever they may be from time to time during his continuance in office for the compensation stipulated, — whether these duties are diminished or increased. Whenever he considers the compensation inadequate, he is at liberty to resign. [23 *N. J. Misc.* at 337, 44 *A.* 2d at 331]

This has long been the law in New Jersey and is followed in other jurisdictions as well. See *e.g., Gillan v. East*

*Newark,* 7 *N. J. Misc.* 616, 146 *A.* 649 (Sup. Ct. 1929) ; *State, Hoxsey, Pros'r v. Paterson,* 40 *N. J. L.* 186 (E. & A. 1878) ; *Evans v. Trenton,* 24 *N. J. L.* 764, 766 (E. & A. 1853) ; see also, 63 *Am. Jur.* 2d, *Public Officers and Employees,* § 279.

The relief prayed for in the complaint is denied. Judgment will be entered accordingly.