## In re NORTHWEST FINANCIAL EXPRESS, INC., Debtor.

## NORTHWEST FINANCIAL EXPRESS, INC., Appellee,

v.

## JWD, INC.; the Money Store, Inc.; and J. Knight, Inc., Appellants.

### No. 90–2483.

United States Court of Appeals, Eighth Circuit.

Submitted April 10, 1991.

Decided Dec. 2, 1991.

* The HONORABLE WILLIAM C. HANSON, Senior District Judge for the Northern/Southern Districts of Iowa, sitting by designation.

Jerry Nugent, Austin, Tex., for appellants.

Charles W. Baker, Little Rock, Ark., for appellee.

Before ARNOLD and BEAM, Circuit Judges, and HANSON,* Senior District Judge.

BEAM, Circuit Judge.

We are presented with a novel priority theory in this fourth bankruptcy appeal arising out of the demise of Northwest Financial Express, Inc. (NWFX), a private money order vendor. *See, In re: NWFX,*

*Inc.*, 864 F.2d 588 (8th Cir.1988) (*NWFX I*); *In re NWFX, Inc.*, 864 F.2d 593 (8th Cir. 1989) (*NWFX II*); and *In re NWFX, Inc.*, 881 F.2d 530 (8th Cir.1989) (*NWFX III*). The district court rejected the theory and so do we.

## I. FACTS

NWFX marketed money orders through retail grocery and convenience stores. The stores would sell money orders to their customers and remit the proceeds to NWFX. At earlier times, the money orders were insured by the Federal Deposit Insurance Corporation (FDIC). In May of 1985, however, NWFX began marketing its own "proprietary" money orders which were not FDIC insured. In essence, the money orders were checks issued by NWFX in exchange for cash. The money orders were then payable at the Northwest National Bank (Bank) in Fayetteville, Arkansas, provided NWFX had sufficient funds in the checking account at the Bank. *NWFX I,* at 589.

On August 1, 1986, NWFX after failing to honor money orders commencing on July 26, 1986, filed a petition in bankruptcy for protection under Chapter 11. *Id.* It is uncertain from the record as to whether NWFX continues at this time to proceed under Chapter 11.

The appellants include JWD, Inc., The Money Store, Inc., and J. Knight, Inc. Like the businesses involved in *NWFX I, II* and *III,* the appellants directly redeemed the dishonored money orders from their customers. The stores, upon payment, took assignments from the individuals to whom the money orders had been originally sold. They invoked, however, an ingenious twist in some of the transactions. Part of these assignments were taken on a transfer form prepared by legal counsel. The form stated:

> For the consideration of $_____, the receipt of which I admit, I (Name)____, of ___(Address)___, sell, transfer and assign any claim against NWFX, Inc. for issuing to me Money Order No. __ dated _____, in the amount of $_____. I deposited the face

amount of such Money Order with the agent of NWFX, Inc. to use the Money Order for my own personal, family or household use. Because I deposited the cash for the Money Order, I intended to receive the services of NWFX, Inc. of having the Money Order honored and paid as if it were a cashier's check or other "paper" as good as cash. NWFX, Inc. did not deliver or provide those services. I transfer this claim to _____.

> SIGNATURE: _____

> DATE: _____

> WITNESS: _____

Appellants' brief at 55.

The purpose of the use of the form was to attempt to bring the assigned claim within 11 U.S.C. § 507(a)(6) and establish a priority for each money order as against other unsecured creditors. The statute reads:

> (6) Sixth, allowed unsecured claims of individuals, to the extent of $900 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided.

11 U.S.C. § 507(a)(6) (1988).

Armed with the assignments, part of which were, as indicated, on the transfer form, the appellants filed timely proofs of claim under 11 U.S.C. § 502(a) and Bankruptcy Rule 3001(a).

Appellants contend that each money order was a "deposit of money" for the "purchase" of a "service[ ] for [the] personal, family or household use" of the purchaser with such service to be delivered in the future. The purported service to be rendered was the eventual payment of money when the money order was presented to the Bank in Fayetteville. This contention explains the reason for including some of the language in the form, especially that concerning the intended use of the order by the purchaser.

 

## II. DISCUSSION

The parties raise, in addition to the priority matter, several other issues. The contentions involve burdens of proof, the prima facie effect of evidence and the admissibility of certain evidence. We find that these matters need not be reached because of our decision on the priority question.

There is no apparent dispute that appellants have valid unsecured claims against the bankruptcy estate. The argument, as indicated, boils down to the priority status, if any, that should be accorded the money order claims.

■ Bankruptcy priorities are determined by the code. Thus, if there is no assigned priority under the cited statute, the evidentiary issues are irrelevant.

The district court adequately discussed how section 507(a)(6) functions when properly applied and sufficiently outlined the legislative history surrounding its enactment. Accordingly, it is not necessary for us to revisit these matters. And, while we arrive at the same end point as the district court, we apply a slightly different rationale.

■ The money orders purchased by each individual were transferable and, probably, negotiable. The evidence in this case and the other NWFX cases indicates that these orders were purchased mainly by persons without checking accounts to pay for goods and services supplied by third parties. The attempt to conceptualize the transaction between the customer and the store as a deposit (by the customer) with an agent of the bankrupt (the store) for a future service to be rendered by another agent of the bankrupt (the Bank), as argued by appellants, breaks down when you try to fit the arrangement under section 507(a)(6). The deal, for section 507(a)(6) analysis, appears to be more akin to the purchase of a product (a transferable instrument) for immediate delivery which product is tradeable in lieu of cash. Admittedly, our approach results in a loose fit when viewed in the context of the Uniform Commercial Code. Our consideration of these exchanges, however, is made here, as indicated, in the framework of claim priorities under section 507(a)(6), not under commercial law. We think that as a matter of policy, statutory priorities should be strictly construed in the bankruptcy context and our construction for the purposes of this appeal fulfills this goal.

## III. CONCLUSION

Accordingly, we find that under the undisputed facts of this matter a priority status for appellants' claims has not been established. The district court is affirmed.