**In re Rahn J. FARRIS, Debtor.**

**Bankruptcy No. 94–10496DWS.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 19, 1997.

Howard E. Davidson, Philadelphia, PA, for Debtor.

Brendan J. Sherman, Ciardi, Maschmeyer & Karalis, P.C., Philadelphia, PA, for Chapter 7 Trustee.

Calvin L. Fisher, Jr., Office of the City Attorney, Camden, NJ, for City of Camden.

Joseph Minni, United States Trustee, Philadelphia, PA.

### *OPINION*

DIANE WEISS SIGMUND, Bankruptcy Judge.

Before the Court is the Chapter 7 Trustee's Objection (the "Objection") to the Proof of Claim of the City of Camden, New Jersey (the "Claim"). After a hearing and an opportunity to file briefs,[1] this matter is now ready for decision. For the reasons stated herein, the Objection is overruled.

### BACKGROUND

The uncontroverted facts are as follows. The Debtor, Rahn J. Farris, filed a voluntary bankruptcy petition under Chapter 11 on February 2, 1994. This Court converted the Chapter 11 case to one under Chapter 7 on August 9, 1994. The Chapter 7 Trustee, Christine C. Shubert (the "Trustee"), was appointed on August 15, 1994, and on August 22, 1994, this Court entered an Order granting her authority to conduct the Debtor's business.[2]

The Debtor had owned and operated two neighboring office buildings on Admiral Wilson Boulevard in the City of Camden, New Jersey. The Trustee testified at the hearing on the Objection to the Claim that shortly after her appointment, she determined that the smaller of the two Camden properties, a vacant building located at 1350 Admiral Wilson Boulevard, held no value to the estate. Thus, she moved to abandon this property. Only the Debtor filed an objection to the proposed abandonment, and he withdrew his objection before the scheduled hearing, which was then cancelled. On February 14, 1995, pursuant to 11 U.S.C. § 554(a),[3] this Court granted the Trustee's motion to abandon the office building at 1350 Admiral Wilson Boulevard.

The Trustee also testified that she determined that she would attempt to sell the larger office building, 1300 Admiral Wilson Boulevard (the "Property"). It is this Property that has engendered the present dispute. At the time the Trustee took over the

---

1. At the hearing, this Court invited briefs from the parties. Counsel for the Trustee stated that he relied solely on an unpublished 10th Circuit opinion, *Butler v. Shanor*, 1995 WL 699016 (10th Cir. Nov. 28, 1995), *cert. denied,* — U.S. —, 116 S.Ct. 2550, 135 L.Ed.2d 1070 (1996). Record at 39. Counsel for the City of Camden stated that he would be filing a brief. However, despite requesting and receiving an extension of time to file its brief, the City of Camden did not submit a brief in support of its Claim.

2. This Order was subsequently extended by further Order.

3. 11 U.S.C. § 554(a) states:

   After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

operation of the Property, it had one tenant, the Camden County Economic Development Association (the "Camden EDA"). The Camden EDA also desired to see the building sold, thereby avoiding the specter of another vacant office building in the City of Camden. To this end, they remained as a tenant throughout the Trustee's tenure as building operator and paid regular rent to the Trustee.

The Trustee hired a realtor and attempted to sell the Property.[4] However, after twelve months, the Trustee was unsuccessful. In January, 1996, she moved to abandon the Property. While two creditors and the Debtor filed objections to the abandonment, the City of Camden (the "City") was not one of the objectors. On March 4, 1996, at the hearing on the Abandonment Motion, all of the objections were withdrawn, and the Motion was granted.

On April 25, 1996, the City timely filed an Affidavit of Proof setting forth its Claim. The Claim seeks $274,284.02, plus interest to be calculated and added to the principal balance, representing "land taxes and/or water sewer charges" for the Property. The Claim includes taxes and charges incurred from the second quarter, 1994, through the second quarter, 1996,[5] and represents "a tax or assessment levied under Title 54, Chapter 5 of New Jersey Statutes. The City asserts that, pursuant to 11 U.S.C. § 507(a)(1), this Claim is entitled to payment as a first priority administrative expense necessary to preserve the Estate.[6]

The Trustee has objected to the Claim. She contends that the City is not entitled to a first priority status on its Claim. In support of her Objection, the Trustee puts forth two arguments.

The Trustee's initial argument is that the Claim is not entitled to first priority status under 11 U.S.C. § 507(a)(1) because "it represents a claim which arose prior to the filing of the petition." Objection at 2. This argument was necessitated by the fact that the Claim as filed was unclear as to precisely what time period the property taxes and/or municipal water and sewer charges covered. This dispute was resolved at the hearing on the Objection to the Claim. Counsel for the City conceded that only those charges incurred post-conversion and pre-abandonment would be eligible to be considered as Chapter 7 administrative expenses. *See* 11 U.S.C. § 726(b). In connection with another dispute between the Trustee and City (*see* note 5 *supra*), the City has reduced its Claim accordingly.

The Trustee's second argument is that, because the Property was ultimately abandoned by the Trustee, the expenses incurred by the Trustee during her operation of the Property cannot be classified as administrative expenses because they do not represent actual and necessary expenses of preserving the Estate. Objection at 2. According to the Trustee, the Property is "treated as if [it] was never part of the [E]state." Record at 28. It is to this argument which I now turn.

## DISCUSSION

### *A.*

◼ Section 507 of the Bankruptcy Code classifies types of expenses and claims against a debtor's estate and prioritizes their order of payment. 11 U.S.C. § 507. Expenses and claims allowed under Section 507 that are incurred after conversion to Chapter 7 enjoy a priority over the same types of claims incurred prior to conversion. 11 U.S.C. § 726(b). *See* 3 Lawrence P. King et

---

**4.** This Court approved the appointment of Douglas R. Sayer, Realtor, on March 9, 1995.

**5.** In connection with the Trustee's Complaint against the City to recover a $20,000 allegedly unauthorized payment made to the City by the Trustee's management company, Adv. No. 96–0481, the City filed the affidavit of Sam Werntz, Water & Sewer Billing Supervisor which set forth, *inter alia,* based on its billing records, the allocation of the Claim to the post-conversion/pre-abandonment period as follows: water—$10,781.49; sewer—$5,479.19; taxes as of

March 29, 1996—$112,763.01, modifying its total Chapter 7 claim to $129,023.69.

**6.** The City also asserts that its Claim is secured by a municipal lien on the Property, suggesting that the City filed a lien against the Property after it was abandoned by the Trustee. *See Makoroff v. City of Lockport,* 916 F.2d 890 (3d Cir. 1990) (the automatic stay of § 362 prevents creation of lien on property of the debtor for postpetition taxes). No evidence was presented at the hearing on this issue.

al., *Collier on Bankruptcy* ¶ 507.02[1] (15th ed.1996). This ensures the orderly winding-up of the debtor's estate. *Citibank, N.A. v. Transamerica Commercial Finance Corp. (In re Sun Runner Marine, Inc.)*, 134 B.R. 4, 7 (9th Cir. BAP 1991) ("[S]ection 726(b) ensures that a liquidation will be carried out consistent with the expressed will of Congress by assuring payment of those who wind up the affairs of the debtor's estate."). The parties now agreeing on that portion of the taxes and other charges that were incurred during the post-conversion/pre-abandonment period, the issue before the Court is whether these taxes and charges are allowable under section 507.

■ The first priority assigned under Section 507 is to administrative expenses allowed under Section 503.[7] Congress granted the first priority to administrative expenses in order to encourage third parties to provide goods and services to the bankruptcy estate. *See, e.g., Toma Steel Supply, Inc. v. TransAmerican Natural Gas Corp. (Matter of TransAmerican Natural Gas Corp.)*, 978 F.2d 1409, 1420 (5th Cir.1992); *Boyd v. Dock's Corner Assocs. (Matter of Great Northern Forest Prods., Inc.)*, 135 B.R. 46, 59 (Bankr.W.D.Mich.1991). If a bankruptcy trustee, or debtor-in-possession administering the bankruptcy estate, determines that operating the debtor's business is in the best interest of the estate, Section 507(a)(1) and Section 503 ensure that the trustee or debtor-in-possession will be able to locate the necessary goods and services to continue operating the debtor's business. As the Court in *Toma Steel Supply* stated:

> Although the estate receives a benefit that often can be measured by the actual cost of necessary goods or services supplied, the estate also receives other less readily calculable benefits, such as the ability to conduct business as usual.

*Id.* at 1420 (citation omitted).

Subsection (b) of Section 503 specifies the types of administrative expenses that are allowed first priority. Expenses from transactions entered into by a bankruptcy trustee, or debtor-in-possession, which are "actual, necessary costs of preserving the estate," thereby enhancing the "ability of debtor[ ]'s business to function as a going concern," are allowable on a priority basis. 11 U.S.C. § 503(b)(1)(A); *In re J.A.V. AG., Inc.*, 154 B.R. 923, 928 (Bankr.W.D.Tex.1993) (citation omitted). However, certain tax liabilities incurred by the bankruptcy estate post-petition[8] are administrative expenses without regard to whether they preserve the estate.

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> \*  \*  \*  \*  \*  \*
>
> (1)(B) any tax—
>
> > (i) incurred by the estate, except a tax of a kind specified in section 507(a)(8) of this title; or
>
> \*  \*  \*  \*  \*  \*

11 U.S.C. § 503(b)(1)(B)(i). *West Virginia State Dep't of Tax & Revenue v. Internal Revenue Service (In re Columbia Gas Transmission Corp.)*, 37 F.3d 982, 984 (3rd Cir.1994) (If the property tax was incurred by the estate, it must be given priority as an administrative expense.).

Real property taxes incurred by a trustee during the operation of the debtor's estate are among those taxes treated as administrative expenses under Section 503(b)(1)(B)(i), *see, e.g., In re Trowbridge*, 74 B.R. 484, 485 (Bankr.E.D.Pa.1987); *Perpetual American Bank v. District of Columbia (In re Carlisle Court, Inc.)*, 36 B.R. 209, 217 (Bankr.D.D.C. 1983), as are accrued interest on such taxes. *United States v. Cranshaw (In re Allied Mechanical Services, Inc.)*, 885 F.2d 837, 839 (11th Cir.1989); *United States v. Friendship College, Inc. (In re Friendship College, Inc.)*, 737 F.2d 430, 433 (4th Cir.1984). In New

---

7. 11 U.S.C. § 507(a)(1) states:
   The following expenses and claims have priority in the following order: (1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

8. Section 507(a)(8) applies to those taxes incurred pre-petition and ranks them as an eighth priority expense.

Jersey the legislature has often elected to include charges for municipal water and sewer service with taxes in statutory provisions dealing with various aspects of the taxing power. *Lamb v. City of Ventnor,* 161 N.J.Super. 140, 143, 390 A.2d 1230, 1231 (1978) (*citing, inter alia,* N.J.S.A. 54:5–19). The City, relying on Title 54 of the New Jersey Statutes (although not directing the Court to any specific provision thereunder), appears to expect water and sewer rents to be treated as taxes, an assumption not challenged by the Trustee. Given the parties' implicit acknowledgement, I will do likewise, *see Carlisle Court,* 36 B.R. at 209 n. 3, although I note the result would be the same if these charges were treated as costs of administration under § 503(b)(1)(A).

This priority scheme represents the deliberate policy considerations of Congress, Courts are not free to "fashion their own rules." *Collier on Bankruptcy* at ¶ 507.02[2]. Rather, the "statutory priorities should be strictly construed." *Northwest Financial. Express, Inc. v. JWD, Inc. (In re Northwest Financial Express, Inc.)* 950 F.2d 561, 563 (8th Cir.1991).

### B.

■ The Trustee argues that the City's expense claims should not be accorded priority because the Property having been abandoned, the estate realized no benefit from the City. The argument misses the mark.

> Whether a tax is incurred by the estate may well be a different question from whether a tax benefits the estate or is necessary to the preservation of the estate.

*Trowbridge,* 74 B.R. at 486 (*citing In re Sunset Enterprises, Inc.,* 49 B.R. 296 (Bankr. W.D.Va.1985) (postpetition abandoned mine reclamation fees are administrative expenses, as postpetition taxes, although these fees benefit the public and not the individual mine operator). In order to receive administrative

expense treatment, a tax must merely be incurred by the estate. The Trustee does not dispute that the taxes were so incurred.

While no proof of benefit must be established,[9] the City did in fact confer a benefit to the estate while the Trustee operated the Property. The provision by the City of services enabled the Trustee to operate the Property, thereby enhancing the prospect of sale. The Trustee's decision to continue operating the Property reflected her judgment that the benefit of so doing outweighed the costs. Unlike the Debtor's neighboring building, the Property was perceived to be a saleable asset that would maximize the return to the estate. During the time the Property was being offered for sale, it was under the exclusive control of the Trustee. She alone was "free to sell, use, or lease the property for the benefit of the estate." *In re Trowbridge,* 74 B.R. at 486. She chose to lease the Property while attempting to sell it. The City facilitated the Trustee's business strategy by providing services to the Property during the Trustee's administration, enabling the estate to receive rental income during the period of operation. The benefit from municipal water and sewer services are easily identified. Other services (*e.g.,* police and fire protection), although less quantifiable, are also tangible benefits provided by the City and paid for directly from real estate property taxes. *In re Trowbridge,* 74 B.R. at 485 (*citing Swarts v. Hammer,* 194 U.S. 441, 24 S.Ct. 695, 48 L.Ed. 1060 (1904)); *Carlisle Court,* 36 B.R. at 216 (same). The Trustee intended that on sale of the Property, the City would be paid its taxes from the proceeds of the sale. Record at 9. Unfortunately for creditors, the Property could not be sold. However, this does not relieve the estate of its requirement under the Code to pay the real property taxes and assessments that were incurred when the Property was being administered by the Trustee.

---

9. Indeed it is not necessary to establish benefit to the estate even under § 503(b)(1)(A) where allowed costs must be actual and necessary to preserving the estate. *See, e.g., Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968) (damages resulting from receiver's negligence were actual and necessary costs of administration); *Commonwealth of Pennsylvania, Dep't of Envtl. Resources v. Conroy,* 24 F.3d 568 (3rd Cir.1994) (environmental clean-up costs of DER were found necessary to preserve the estate as property could not be abandoned).

The Trustee proffers the unpublished[10] Tenth Circuit opinion, *Butler v. Shanor,* No. 94–2198, 1995 WL 699016 (10th Cir. Nov. 28, 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 2550, 135 L.Ed.2d 1070 (1996) as her sole legal authority for the position she advances. In *Butler,* the Tenth Circuit affirmed a bankruptcy court decision allowing a Chapter 7 trustee to avoid paying Chapter 7 *ad valorem* taxes incurred on property eventually abandoned by the trustee. Relying on that case, the Trustee appears to suggest that the Property abandonment is effective *nunc pro tunc,* as if the Trustee's administration of the Property had not occurred.[11] It follows, she contends, that no administrative expenses were actually incurred.[12]

I find *Butler* to be inapplicable to the instant dispute. First, it is not a case adjudicating an objection to a taxing authority's administrative expense claim under Sections 507 and 503. Rather, *Butler* is a declaratory judgment action brought by the bankruptcy trustee against the mortgagee on the abandoned property who had requested that the bankruptcy estate pay the taxes. The court stated:

> although assessed against property administered by the estate, the *ad valorem* taxes never became an expense of administration

in this estate because no such request was ever made.

*Id.* at * * 4. Conversely, here we have the City directly requesting an administrative expense priority under Sections 507 and 503.

The Trustee presumably seizes upon the dicta in *Butler* that because the estate no longer possessed an interest in the property by reason of its abandonment, the estate had no responsibility to pay ad valorem taxes incurred prior to the abandonment. The Tenth Circuit in *Butler* appears to reach that conclusion from the well accepted principle that "abandonment of estate property nullifies its previous relationship to the bankruptcy estate." *Id.* at * *3. It cites the Circuit Court decision in *Dewsnup v. Timm (In re Dewsnup),* 908 F.2d 588, 590–91 (10th Cir. 1990), *aff'd,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) and various bankruptcy cases, including *J.A.V. AG, Inc.,* 154 B.R. at 926 for this principle. None of the cases cited in *Butler* stand for the proposition that this "nullification" eradicates all obligations that arose during the period the property was in the estate. Rather they concern themselves with the status of the property abandoned.[13] Nor did my research disclose any support for this proposition.[14] To the

---

**10.** Although noting that citation of unpublished opinions remains unfavored, the Tenth Circuit allows an unpublished opinion to be cited in oral argument if the opinion has "persuasive value on a material issue" and, "copies are furnished to the Court and all parties." General Order of Nov. 29, 1993, suspending 10th Cir. Rule 36.3 until Dec. 31, 1995, or further order. Counsel for the Trustee neglected to furnish both the Court and the City with copies of this opinion, and counsel for the City complained of this oversight. The remedy he sought was an extension of time to submit his brief which was granted. He does not ask us not to consider this case, and we will do so in order not to penalize the estate by counsel's oversight.

**11.** Since the Trustee declined the invitation to submit a legal brief in favor of simply citing to us the *Butler* opinion, I am left to surmise from reading the case what her argument is.

**12.** This argument does not explain the basis for paying some administrative expenses of the Property and not others. Moreover, the Trustee has not moved this Court to recover the administrative expenses previously paid.

**13.** The *Dewsnup* Court observes that the estate has no interest in abandoned property and like property in which the estate never had an interest, § 506(a) does not apply because it is limited in its application to "property in which the estate has an interest". Thus, the debtors could not void the undersecured portion of the lien on that property. *JAV,* stands directly against the spin on "nullification" urged here. In *JAV,* the estate was charged with the administrative expenses of repairing trucks because the damage occurred after conversion and before abandonment.

**14.** In *Investors of the Triangle v. Carolina Triangle Ltd. Partnership (In re Carolina Triangle Ltd. Partnership),* 166 B.R. 411, 417 (9th Cir. BAP 1994), the bankruptcy appellate panel affirmed the denial of an administrative expense for unpaid real estate taxes that, like *Butler,* had been requested by the mortgagee, not the taxing authority. There, like here, the estate had abandoned the real estate. However, in that case, the abandonment occurred after the Court confirmed a reorganization plan that failed to provide for the payment of post-petition taxes. In finding against the mortgagee, the Court began by noting that the taxing authorities were not parties to the appeal and questioned who other

extent the Tenth Circuit would conclude that there is no administrative expense for Chapter 7 tax obligations incurred by the Trustee, I respectfully disagree.

## C.

I am aware that my decision today may confer an unintended benefit upon the mortgagee or present owner of the Property, at the expense of the estate's creditors, since the City's liens for the Claims will be satisfied in whole or in part. While this result is perhaps unfortunate, the Court is not free to alter it at this time.[15] After conversion, the Trustee decided to operate the Property after considering the costs and benefits of so doing. She could have abandoned it, as she had the adjacent Camden property, and not incurred these taxes. Instead, she chose to operate the Property, thereby preserving what she viewed as potential equity for the estate. I do not second guess the Trustee's business judgment but I find no basis to relieve the estate from the result.

The Trustee's Objection is overruled and the City is allowed a Chapter 7 administrative expense for property taxes and municipal water and sewer charges on the Property incurred post-conversion and pre-abandonment in the amounts stipulated by the parties. *See* note 5 *supra.*

---

than the taxing authority would have had standing to raise the issue. *Id.* at 415 n. 4. Most significantly, in its conclusion, and in its discussion (twice), it noted that there was no evidence in the record that taxes were corresponding to the time the debtor had possession of the property. The absence of any admissible evidence regarding real property taxes owing may explain the panel's reliance on § 502(b)(3) that no real property taxes were "incurred" by the estate. Section 502(b)(3) deals only with unsecured tax claims. *See In re Garfinkel's, Inc.*, 203 B.R. 814, 823, (Bankr.D.D.C.1996); *In re Spruill*, 78 B.R. 766, 771–72 (Bankr.E.D.N.C.1987). Noting that this section provides for the allowance of a prepetition claim except for property taxes that exceed the value of the estate's interest in the property, and recognizing that after abandonment the estate had no interest in the property, the Court found there to be no administrative expense. The purpose of § 502(b)(3) is to prevent depletion of the bankruptcy estate by the payment of taxes on property which has come into the hands of the trustee despite the fact that such property has no value and will likely be abandoned. *Collier on Bankruptcy* ¶ 502.02[4] at 502–45. By contrast, § 503(b)(1)(B) allows tax claims incurred by the estate. Since the City's tax claims all arose during the Trustee's operation of the Property, the analysis in *Carolina Investors* is inapplicable here.

That *Carolina Investors* is not intended to be applicable to the facts before me is apparent

from its reading of a case involving an analogous situation. In *In re Erie Joint Venture v. Prudential Insurance Company of America (In re Erie Joint Venture)*, 125 B.R. 140 (Bankr.W.D.Pa. 1991), the Court held a debtor-in-possession responsible for the post-petition taxes and water, sewer and fire charges allocable to the period the debtor remained in possession of the Property, operated its business and attempted to reorganize. The Court found that the amount should be paid as a priority administrative expense under the confirmed plan of reorganization notwithstanding the fact that the mortgagee had been granted relief from stay and foreclosed on the property. The *Carolina Triangle* Court distinguished this decision from the facts of its case by noting that the estate was operating a hotel located on the real property and was being benefitted by the income generated from the property which could be used to pay taxes. 166 B.R. at 416 n. 6. Presumably it would also distinguish this case by the fact that the Trustee was operating an office building on the real property and was being benefitted by the income generated from the property which could be used to pay taxes.

15. I express no opinion as to whether the Trustee might be able to establish a direct benefit to the mortgagee under Section 506(c) to recover any of the charges to be paid by the estate. 11 U.S.C. § 506(c). *See United Jersey Bank v. Miller (In re C.S. Assocs.)*, 29 F.3d 903 (3rd Cir.1994).