In re MAILMAN STEAM CARPET CLEANING, INC., Debtor.

Richard Salem, Trustee, Appellant,

v.

Mailman Steam Carpet Cleaning, Inc., Appellee.

No. MW 01–008.

United States Bankruptcy Appellate Panel of the First Circuit.

Dec. 5, 2001.

Richard P. Salem, Leicester, MA, for the Appellant.

Steven A. Kressler, Kressler & Kressler, P.C., Worcester, MA, for the Appellee.

Before LAMOUTTE, HAINES, DEASY, U.S. Bankruptcy Appellate Panel Judges.

HAINES, Bankruptcy Judge.

Before us is the Chapter 7 trustee's appeal of a bankruptcy court order determining that real estate taxes that accrued on the debtor's property while it was property of the bankruptcy estate (from December 6, 1993, to March 7, 1996) constitute an administrative expense under

Bankruptcy Code § 503(b)(1)(B)(i).[1] The court ordered the trustee to pay the taxes as a first priority distribution pursuant to § 507(a)(1) and § 726(a)(1).[2] For the reasons set forth below, we reverse.

### Jurisdiction

The order before us is the court's final judgment in an adversary proceeding initiated by the debtor, Mailman Steam Carpet Cleaning, Inc. ("Mailman"). The judgment finally resolved all issues litigated by the parties. It therefore constitutes a final order. *In re Saco Local Dev. Corp.*, 711 F.2d 441, 444 (1st Cir.1983); *In re Bank of New England Corp.*, 218 B.R. 643, 645 (1st Cir. BAP 1998). We have appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1), (b)(1).

### Scope of Review

■ The bankruptcy court's findings of fact will be affirmed unless they are "clearly erroneous." We review the lower court's legal conclusions *de novo*. *Grella v. Salem Five Cent Savings Bank*, 42 F.3d 26, 30 (1st Cir.1994); *Birch v. Choinski (In re Choinski)*, 214 B.R. 515, 518 (1st Cir. BAP 1997). Neither party takes issue with the bankruptcy court's factual findings; this appeal presents only legal issues.

### Background

Although this bankruptcy case has a lengthy history, and has (to date) spawned two appeals to the circuit court,[3] the dispute before us today is straightforward. Like the earlier appeals, it revolves around the disposition of a parcel of real estate located at 140 South Main Street, Gardner, Massachusetts ("140 South Main"), owned by Mailman.

The parties have framed the issue on appeal as whether the Chapter 7 estate should be ordered to pay as a first priority administrative expense the taxes that accrued while 140 South Main was an asset of the estate. We cast the inquiry slightly differently, asking, "Whether, years after abandonment, the debtor may compel the Chapter 7 trustee to pay real estate taxes that accrued during the time property remained an asset of the estate?" As explained below, we conclude that, for this debtor, in this case, the answer is "No."

### Facts

Mailman filed a voluntary Chapter 7 petition on March 15, 1993. The case was converted to Chapter 11 on April 5, 1993, and operated as debtor-in-possession until December 6, 1993, when it re-converted to Chapter 7. Richard Salem ("Salem") was appointed Chapter 7 trustee on December 13, 1993. On February 16, 1996, Salem filed a notice of intention to abandon 140

---

1. Unless otherwise indicated, citations to statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101 *et seq.*

2. The bankruptcy court's decision appears as *Mailman Steam Carpet Cleaning, Inc. v. Salem (In re Mailman Steam Carpet Cleaning, Inc.)*, 256 B.R. 240 (Bankr.D.Mass.2000) (hereafter *Mailman III* ).

3. *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 212 F.3d 632 (1st Cir. 2000) (*Mailman II* ); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196

F.3d 1 (1st Cir.1999) (*Mailman I* ). This appeal is before us despite the circuit court's observation in *Mailman II* that "[a]t long last, the lower courts appear to have laid this tangled and contentious matter to rest," 212 F.3d at 637.

The circuit court decisions indicate the debtor's name as "Mailman Steam Carpet Cleaning Corp." The bankruptcy court's appellation this time around is "Mailman Steam Carpet Cleaning, Inc." The disparity is of no consequence for present purposes.

84

South Main, citing liabilities including a first mortgage balance of "$186,000 plus," "unknown" hazardous material clean-up costs, and an "unknown" market value.[4] On March 7, 1996, the bankruptcy court, without objection, approved the abandonment.[5]

Four years after abandonment, on June 2, 2000, Mailman filed an adversary complaint seeking to compel Salem to "pay any and all outstanding real estate, water/sewer, late fees and demands to the City of Gardner, from December 6, 1993 when the Trustee was appointed, until March 7, 1996, when [the court] allowed the Trustee to Abandon his interest in said property." [6] After trial, the bankruptcy court ordered the trustee to pay the real estate taxes. This appeal ensued.

### The Decision Below

The bankruptcy court's ruling was pinned on its notion of equity as much as on its reading of the statute. The court observed that 140 South Main had remained in the estate, under the trustee's control, for over twenty-six months, yet the trustee put forth "no reasonable explanation" for not abandoning it earlier. *Mailman III*, 256 B.R. at 242. The court continued: "It is not equitable for Trustees to hold property that is not actively

being administered in some way in the hope that it will eventually, perhaps over two years later, confer a benefit without requiring payment of the administrative costs of the Property." *Id.* The bankruptcy court explicitly concluded that the debtor was under no obligation to move for abandonment: "Although [a motion to compel abandonment] may have been judicious, it is not required, and the burden is on the Trustee to provide for property within a bankruptcy estate." *Id.*

### Discussion

■ We begin with the pertinent statutes. Section 503(b) addresses responsibility for post-petition taxes in the following terms:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) ...

(B) any tax—

(i) incurred by the estate, except a tax of a kind specified in section 507(a)(8) of this title;

11 U.S.C. § 503(b)(1)(B)(i).[7] Section 507(a)(1) dictates that allowed administrative expenses be treated first among priority claims, and § 726(a)(1) provides that

---

**4.** A certificate of service accompanying the notice of abandonment establishes it was served on the debtor, the City of Gardner's tax collector, and several other interested parties.

**5.** *See* § 554(a); Fed. R. Bankr.P. 6007(a).

**6.** Adversary Complaint, Appellant's Appendix, A–041, A–043 (hereafter "App. at ___"). Although the prayer for relief sought payment of "water/sewer" fees and "late fees," and although those charges were part of the record, *see* Plaintiff's Motion for Summary Judgment, Exhibits 1 and 2, App. at A–086, A–087, the judgment before us only addresses "real estate taxes in the amount of $6,768.60." Thus,

we need not, and will not address, how "water/sewer" fees, "late fees," and other such charges are treated under the Code's priority and distribution scheme.

**7.** The exception for § 507(a)(8) taxes, which include certain income taxes, pre-petition property taxes, withholding taxes, employment taxes, excise taxes, customs duties, and certain tax-related penalties, does not enter into our analysis.

This dispute does *not* concern § 503(b)(1)(A), which establishes administrative expense status for "actual, necessary costs and expenses of preserving the estate."

priority claims shall receive distributions from the estate ahead of all other unsecured claims. Section 503(a) provides that "any entity" may "timely file" a request for payment of an administrative expense, or may do so "tardily" if permitted by the court "for cause." Finally, we acknowledge 28 U.S.C. § 959(b), which generally requires trustees in bankruptcy cases to "manage and operate the property in [their] possession" according to state law "in the same manner that the owner or possessor thereof would be bound to do if in possession thereof."

The bankruptcy court's decision followed the holding and rationale of *In re Trowbridge*, 74 B.R. 484 (Bankr.E.D.Pa.1987). The *Trowbridge* court addressed circumstances resembling, but far from identical to, those before us. There, after the debtor's estate generated sufficient funds to pay unsecured creditors in full (with interest), the trustee sought to return real estate to the debtor pursuant to 11 U.S.C. § 726(a)(6). *In re Trowbridge*, 74 B.R. at 485. Property taxes had accrued on the parcel during the approximately seven years it had been in the bankruptcy estate. *Id.* The trustee had paid some of them, but at final distribution taxes for the last two years were owing. *Id.* Although the taxing authority took no action, the debtor objected to the proposed distribution, asserting that the trustee should pay the outstanding taxes with estate funds *before* returning the property to her. *Id.*

The court agreed with the debtor, commenting:

In general, postpetition property taxes, (as well as certain other taxes), are treated as an administrative expense liability of the estate under section 503(b)(1)(B) and allowed as a first distribution priority pursuant to 11 U.S.C. § 507(a)(1). At least two related rationales underlie this general principle, insofar as property taxes are concerned. First, the trustee, on behalf of the estate, has control of real property, postpetition, and this property has received all of the benefits and services provided by local government, for which local property taxes are intended as some recompense. In addition, the stay under section 362(a), which protects property of the estate, prevents taxing authorities from asserting liens against the property in order to insure or compel payment of postpetition taxes.

*Id.* (citations omitted).

*Trowbridge* noted the trustee's exclusive control of the property, the effect of the automatic stay,[8] and the debtor's inability to use the property while it remained in the estate. *Id.* at 486. Importantly, the court also considered the result fair, "for if the property were of no benefit to the estate, the trustee was free to abandon [it] (or creditors or the debtor was free to seek to have the property abandoned) pursuant to 11 U.S.C. § 554.... Here, though, the property was never abandoned." *Id.* The *Trowbridge* debtor objected to the trustee's attempt to return to her property saddled with unpaid taxes. She made objection at the first opportunity presented by the trustee: distribution pursuant to § 726(a)(6).

Like the taxing authority in *Trowbridge*, the City of Gardner made no claim against the bankruptcy estate for unpaid real es-

---

**8.** We note that the *Trowbridge* court's concern regarding the effect of the automatic stay on a taxing authority's ability to assert liens on property for unpaid postpetition taxes has been ameliorated by subsequent revisions to § 362. *See* Pub.L. No. 103–394, § 401 (codified as 11 U.S.C. § 362(b)(18) (§ 362(a) does not operate as a stay of the "creation or perfection of a statutory lien for an ad valorem property tax imposed by ... a political subdivision of a State, if such tax comes due after the filing of the petition."));

tate taxes. Like the debtor in *Trowbridge,* Mailman did not move to compel abandonment at an early stage.[9] But neither did it object to the trustee's abandonment of 140 South Main on the grounds that it would be subject to liability for estate-incurred property taxes. Mailman waited an additional four years before filing an adversary proceeding seeking payment of the taxing authority's due.[10]

The court below also relied on *In re Farris,* 205 B.R. 461 (Bankr.E.D.Pa.1997), for the proposition that, regardless whether property confers a benefit on the estate, the question to be answered in a § 503(b)(1)(B)(i) analysis is whether the taxes were "incurred" during the trustee's administration of the property, *Mailman III,* 256 B.R. at 242, a proposition with which we take no issue.

The *Farris* trustee objected to a proof of claim filed by the City of Camden, New Jersey, seeking administrative priority for real estate taxes (and related charges) pursuant to § 503(b)(1)(B). *In re Farris,* 205 B.R. at 463. The taxes had been assessed during the period from the case's conversion to chapter 7, through abandonment (approximately two years). *Id.* The court overruled the trustee's objection because the trustee had actively marketed the property, collecting rent from the building's tenant all the while. *Id.* at 462–63. After marketing efforts proved unsuccessful, the trustee abandoned the property. *Id.* at 463. Less than two months later, the City of Camden filed its proof of claim. *Id.*

Our case differs from *Farris* in two important respects: First, the request for payment there was made by the taxing authority itself, rather than by a hopeful, indirect beneficiary of an estate-funded tax payment. Second, the request for payment was made immediately, not four years, after abandonment.

■ For these reasons, we find neither *Trowbridge* nor *Farris* particularly compelling authorities. We note, however, that Salem's principal line of argument is equally unconvincing. He asserts that once 140 South Main was abandoned "the property interests are treated as if they had remained with the debtor at all times and any charges in regard thereto ... are charges to be paid by the debtor...." Trustee's Brief, at 6. Salem's argument relies on the "relation back" doctrine developed under the Bankruptcy Act. *See United States v. Grant,* 971 F.2d 799, 804–05 (1st Cir.1992)(explaining the notions of relation back and "revesting"). Under the "revesting mechanism" of the relation back doctrine, "the bankrupt's prepetition title to the abandoned property would be reinstated, free of any intervening act *by the trustee....*" *Grant,* 971 F.2d at 804 n. 7 (citation omitted) (emphasis in original); *see also Butler v. Shanor,* No. 94–2198, 1995 WL 699016 (10th Cir. Nov.28, 1995)(unpublished decision) (once property was abandoned, it was as if administration of asset never occurred, so property tax claim asserted post-abandonment could not be paid as administrative claim). In *Grant,* the First Circuit expressly rejected

9. *See* § 554(b) (providing that a party-in-interest may request abandonment of property that is "burdensome" to the estate or of "inconsequential" value and benefit to the estate); Fed. R. Bankr.P. 6007(b) (party-in-interest seeking to compel abandonment proceeds by motion).

10. *Trowbridge's* scenario differs from ours in another regard. The estate had a surplus. Presumably, had the trustee not paid the taxes, he would have returned to the debtor both the property *and* the funds to pay them. *See* § 726(a)(6). The case leaves unexplained exactly why the debtor and the trustee were at odds under those circumstances.

the debtor's argument that the "relation back" doctrine was available to defend a criminal prosecution, and pertinently noted that "[t]he principal *raison d'etre* of the 'vesting' mechanism no longer obtains under the Bankruptcy Code." *Id.* at 805.

*Grant* casts serious doubt on the relation back/revesting doctrine's continued vitality. We decline to rely on it for our decision. We do not endorse Salem's view that a trustee's abandonment of property (even the abandonment of property that has not been "actively administered") pursuant to § 554(a) precludes estate liability for property taxes.

The Tenth Circuit's unpublished *Butler* decision made another point worth consideration today. It observed that the dispute relating to estate liability for property taxes had been initiated by the trustee, who obtained a declaration of non-liability in the lower court. That declaration was appealed by a mortgagee, who was aggrieved by nonpayment. The court noted that the taxing authority had not requested payment and determined that, absent such a request, timely made, the trustee could not pay the tax. *Butler v. Shanor*, 1995 WL 699016, at *4. For our purposes, the City of Gardner's lack of interest in these proceedings is, as discussed below, not insignificant.

■ We agree that the applicable statutory sections should be straightforwardly applied, as both *Trowbridge* and *Farris* suggest. We do not agree with the bankruptcy court, however, that in a case such as this, where the debtor is the party seeking payment of a purported administrative expense to a third party, years after the property's abandonment, the statute requires that real estate taxes be paid from estate funds. Mailman sat on its hands (with "no reasonable explanation") for four years after abandonment before filing an adversary proceeding against the trustee. We do not believe such inaction complies with § 503(a)'s requirement that an entity seeking payment of an administrative expense "*timely* file" its request. Assuming without deciding that Mailman had standing to request that the taxes be paid, its request was anything but timely.[11] And the record is devoid of any justification for Mailman's extended delay.

Moreover, although we agree that Mailman was not *required* to move for the abandonment of 140 South Main as it had the right to do under § 554(b) and Fed. R. Bankr.P. 6007(b), we believe that its failure to do so, coupled with its failure to object when the trustee ultimately did abandon the property, precludes its late-made argument that it "had no ability to exercise any control over the Property ... insofar as the Trustee's role eliminated the Debtor's ability to use, rent or convey the Property." *Mailman III*, 256 B.R. at 241. When the trustee filed notice that the property would be abandoned ("warts and all"), Mailman stood silent. It took no action for another four years. And all the while, the City of Gardner pressed the estate for nothing, perhaps concluding that 140 South Main's abandonment, coupled with the town's tax collection and lien procedures, rendered it as good as paid.

It is this combination of factors, the debtor seeking payment of a claim belong-

---

11. Section 503(a) provides that "any entity" may request payment of an administrative expense. The Code and Rules do not illuminate the limits, if any, on the breadth of standing the statute confers. *See* 4 Lawrence P. King, *Collier on Bankruptcy* (15th Ed. Rev. 2001) ¶ 503.02. Thus we are loathe to accept *Butler's* apparent teaching that only the taxing authority may request payment of administrative property taxes. Insofar as today's decision is concerned, we need not reach the point.

**88**

ing to a third party, years after the claim ripened and the opportunity for pressing the claim was presented, that leads us to the conclusion that the bankruptcy court erred in ordering the trustee to pay the real estate taxes at issue.

### Conclusion

For the reasons set forth above, we reverse the order of the bankruptcy court requiring the trustee to pay real estate taxes to the City of Gardner, Massachusetts in the amount of $6,768.60.